UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIMOTHY DESHAWN HARRIS, JR.,

                Petitioner,

   v.

JERI BOE,

                Respondent.

CASE NO. 2:23-CV-424-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: December 1, 2023

The District Court has referred this action to Chief United States Magistrate Judge David W. Christel. Petitioner Timothy Deshawn Harris, Jr., proceeding *pro se* and *in forma pauperis*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkts. 1, 9. The Court concludes the state court's adjudication of the grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

REPORT AND RECOMMENDATION - 1

I.     **Background**

A.     Factual Background

On February 10, 2021, in the Superior Court of Washington for King County ("trial court"), Petitioner was found guilty of rape in the first degree and robbery in the first degree following a bench trial. *See* Dkt. 24-1 at 2 (Exhibit 1). The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> In 2017, the State charged Harris with rape in the first degree and robbery in the first degree, alleging that he brutally attacked the victim in her home. Harris represented himself at the 2018 trial and the jury convicted him as charged. On appeal, this court accepted the State's concession, reversed Harris's convictions based on instructional error, and remanded for retrial. State v. Harris, No. 79415-9-I, Slip Op. (Wash. Ct. App. March 16, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/794159.pdf.
>
> On remand, the trial court set an initial trial date of September 9, 2020, and Harris filed a motion seeking to represent himself. The court conducted a colloquy to determine if Harris understood the nature of the charges, the potential penalties he faced, and the rules he would be required to follow if the court allowed him to represent himself. Ultimately, the court found that Harris's request was equivocal and denied the motion.
>
> Harris's appointed counsel sought two continuances, over Harris's objection, in order to review the transcripts and evidence from the first trial. The court granted both requests and, as a result, continued the trial to November 30, 2020. The State then sought an eight-week continuance to accommodate the schedule of a witness who testified at the first trial. Defense counsel joined the request, indicating that he needed additional time to prepare for trial. Again, over Harris's personal objection, the court granted the motion, and continued the trial to January 25, 2021.
>
> Approximately two weeks before trial was scheduled to begin, Harris reasserted his motion to proceed pro se. A different trial court judge considered the motion. Again by way of brief summary: noting that Harris had represented himself at the first trial and, two months earlier, the court had engaged in a full colloquy, the court granted his motion.
>
> On the first day of trial before a third judge, Harris moved to dismiss the charges, alleging a speedy trial violation under CrR 3.3, and the trial court denied the motion.
>
> After a bench trial, the court found Harris guilty of both charges and entered findings of fact and conclusions of law. The court imposed an indeterminate

REPORT AND RECOMMENDATION - 2

sentence on the rape count, with a minimum term of 147 months, the top-end of the standard range, and a concurrent sentence of 54 months on the robbery count.

Dkt. 24-1 at 19-20 (footnote omitted); *State v. Harris*, 23 Wash. App. 2d 1036 (2022).

B. Procedural Background

1. *Direct Appeal*

Petitioner challenged his convictions and sentence on direct appeal. *See* Dkt. 24-1 at 36 (Exhibit 3). The state court of appeals affirmed Petitioner's convictions. *Id*. at 18-34 (Exhibit 2). Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *Id*. at 134-74 (Exhibit 7). On February 8, 2023, the state supreme court denied Petitioner's petition for review without comment. *Id*. at 176 (Exhibit 8). The record does not indicate Petitioner filed a personal restraint petition in the state courts.

2. *Federal Petition*

On March 20, 2023, Petitioner initiated this case. Dkt. 1. In his Petition, Petitioner raised the following two grounds for relief:

1. Speedy trial violation.

2. *Pro se* colloquy violation.

Dkt. 9 at 5, 7. On August 28, 2023, Respondent filed, and served on Petitioner, an Answer to the Petition. Dkts. 23, 24. In the Answer, Respondent asserts the state court's adjudication of the two grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 23. Petitioner filed a traverse on September 8, 2023. Dkt. 26.

II. **Evidentiary Hearing**

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

REPORT AND RECOMMENDATION - 3

entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to hold an evidentiary hearing because, as discussed in this Report and Recommendation, Petitioner's grounds for relief may be resolved on the existing state court record.

### III. Discussion

Respondent maintains the state courts' adjudication of the two grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 23.

#### A. Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

B. Speedy Trial (Ground 1)

In Ground 1, Petitioner alleges his right to a speedy trial was violated when there was an excessive delay while he was awaiting his trial. Dkt. 9 at 5.

First, to the extent Petitioner's challenge is to a violation of a state speedy trial rule, this is an error of state law and not cognizable in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). However, in his traverse, Petitioner specifically states that his Sixth

1  Amendment speedy trial rights were violated. *See* Dkt. 26. Therefore, the Court will analyze

2  Ground 1 as a challenge of Petitioner's speedy trial rights under the Sixth Amendment.

3  "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall

4  enjoy the right to a speedy and public trial . . ..'" *United States v. Marion*, 404 U.S. 307, 313

5  (1971). "A literal reading of the Amendment suggests that this right attaches only when a formal

6  criminal charge is instituted and a criminal prosecution begins." *United States v. MacDonald*,

7  456 U.S. 1, 6 (1982). The United States Supreme Court has long held "[t]he right of a speedy

8  trial is necessarily relative. It is consistent with delays and depends upon circumstances."

9  *Beavers v. Haubert*, 198 U.S. 77, 87 (1905). Thus, "inquiry into a speedy trial claim necessitates

10  a functional analysis of the right in the particular context of the case." *Barker v. Wingo*, 407 U.S.

11  514, 522 (1972).

12  To evaluate a speedy trial claim, the Court should consider the following four factors:

13  "'(1) whether delay before trial was uncommonly long, (2) whether the government or the

14  criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant

15  asserted his right to a speedy trial, and (4) whether he suffered prejudice' because of the delay."

16  *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (quoting *Doggett v. U.S.*, 505 U.S.

17  647, 651 (1992)). The four factors are related and must be considered together with other

18  circumstances relevant to a particular case. *Barker*, 407 U.S. at 533.

19  In finding Petitioner's speedy trial rights were not violated, the state court of appeals,

20  first, summarized the facts relevant to the claim:

21  > The trial court set an initial trial date on remand of September 9, 2020, based on a
22  > speedy trial expiration date of October 1, 2020. At the August 2020 omnibus
23  > hearing, defense counsel asked to continue the trial for six weeks, until October 19,
24  > 2020, citing the need to review discovery and the transcripts from the first trial. The
25  > court granted the motion, over Harris's personal objection, finding good cause to
26  > continue and no prejudice to Harris's defense, and recalculated the trial expiration

> date to November 18, 2020. The court observed that counsel's review of the record would be time-consuming, particularly since defense counsel had not represented Harris in the first trial.
>
> On October 2, 2020, defense counsel requested another a six-week continuance, to November 30, 2020. Counsel informed the court that he was currently in trial and had not yet completed review of the trial transcripts. The court granted defense counsel's request, again over Harris's objection, finding good cause to continue and no prejudice to Harris. The court recalculated the trial expiration date to December 30, 2020. The State did not object to either of these requests.
>
> In November 2020, immediately after the trial court denied Harris's initial motion to proceed without counsel, the court considered a third and final motion to continue the trial. This time, the State sought a continuance of eight weeks, until January 25, 2021. The State explained that the police department's latent print examiner who testified in the first trial was on family medical leave until early February. Noting Harris's personal objection, defense counsel joined in the State's motion because he needed additional time to prepare for trial. Again, the court granted the motion, over Harris's objection, finding good cause to continue the trial and no prejudice to Harris's defense. The court reset the trial expiration date to February 24, 2021.

Dkt. 24-1 at 29-30 (footnote omitted).

The state court of appeals then discussed the relevant state law and determined Petitioner had not shown a speedy trial violation, stating:

> Harris's speedy trial argument focuses on the trial court's decision granting the State's motion to continue in November 2020. Harris claims the court abused its discretion when it continued the trial based on the latent print examiner's unavailability because, having testified at the first trial that Harris's fingerprints were not found at the scene of the crime, he was not a significant State witness and the parties stipulated to the admission of his prior testimony. But both scheduling conflicts and the need to allow counsel time to prepare for trial are valid reasons for a continuance. State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005). In particular, the unavailability of a material witness may be a proper basis for continuing a trial under CrR 3.3(f) if (1) the witness is unavailable for a valid reason, (2) the witness will become available in a reasonable time, and (3) there is no substantial prejudice to the defendant. State v. Jones, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003). The burden of establishing materiality "has been described as establishing a colorable need for the person to be summoned." State v. Smith, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984).
>
> The prosecutor explained that the witness had testified at the first trial, and she believed the testimony was necessary because it established the foundation for

REPORT AND RECOMMENDATION - 7

admission of a number of exhibits and because the witness had examined lifted prints and assisted with processing the crime scene. Harris did not challenge the State's assertion of materiality, and as noted, defense counsel joined in the request to continue, citing a need for additional time to prepare for trial in light of the denial of Harris's motion to represent himself.

The witness in this case was unavailable due to family medical leave, a valid basis for unavailability. See State v. Grilley, 67 Wn. App. 795, 799, 840 P.2d 903 (1992) (law enforcement officer's previously scheduled vacation was a valid reason for the officer's unavailability). The prosecutor sought a continuance of eight weeks, until late January, presumably on the assumption that the witness would be available in early February before the trial would conclude. The delay was significant, but not unreasonable, given the circumstances. Harris objected to the continuance, but did not identify any prejudice to his defense.

On appeal, Harris suggests he was forced to proceed pro se because of the continuances. But the record does not establish that the continuances were the sole or primary reason for Harris's motion. Harris told the court in January 2021 that he wanted to represent himself because he was ready for trial and counsel was not. But, he also represented himself at the first trial and indicated in his November 2020 motion that he was electing to proceed without counsel because of "inefficient counseling."

Harris also contends that the trial court failed to state the basis for the continuances. But in granting each motion, the court found good cause to continue and no prejudice to Harris's defense. And each of the trial court's written orders includes the factual basis for the continuance.

The court stated its reasons in accordance with CrR 3.3(f)(2). And, with regard to the State's request regarding the latent print examiner who testified on behalf of the State in the first trial, Harris did not challenge the State's assertion of materiality, and the court had no way of knowing the parties would later stipulate to the admission of the witness's prior testimony. For these reasons, the court did not abuse its discretion in concluding the State established a "colorable need" for the witness's testimony and granting the State's motion to continue. See Smith, 101 Wn.2d at 41-42. Harris fails to establish a violation of his right to a speedy trial under CrR 3.3.

Dkt. 24-1 at 31-33.

Here, as detailed by the state court of appeals, the record shows Petitioner's defense counsel sought two six-week continuances after Petitioner's case was remanded from the state court of appeals. See Dkt. 24-1 at 29-30, 180-85. Petitioner's counsel did not represent Petitioner

REPORT AND RECOMMENDATION - 8

at his first trial and sought the extensions of time to adequately review over 1500 pieces of discovery and over 900 pages of trial transcripts. *See id*. at 180-85. The state sought an additional eight-week extension of time in November, which Petitioner's counsel did not oppose. *Id.* at 220-21. Petitioner again objected. *Id*. at 221. The trial court granted all three continuances, finding good cause in the administration of justice and no prejudice to Petitioner's defense. *Id*. at 182, 185, 221.

In considering the four factors identified in *Barker*, the Court finds Petitioner has not shown the state court's adjudication of this claim was contrary to federal law. First, whether delay before trial was uncommonly long, the trial was initially set for September 9, 2020. The trial was continued three times and occurred on January 25, 2021. Approximately four and a half months passed between initial trial date and the date of the new trial, which was also less than a year after the case was remanded. The Court does not find the length of time constitutes a speedy trial violation. *See Page v. Lockyer*, 200 F. App'x 727 (9th Cir. 2006) (finding a six year delay, in light of the other *Barker* factors, did not violate the right to a speedy trial).

Second, whether the State or the Petitioner is more to blame for that delay, the record shows Petitioner was more to blame than the government for the delays. The record shows Petitioner's counsel requested two of the continuances and did not oppose the third because he needed more time to prepare. Therefore, most of the delays were caused by Petitioner's counsel. The trial court also granted a continuance because one of the State's witnesses was on family medical leave. As such, there is no evidence the State's requests for continuances were the result of a deliberate or bad faith delay. *See Doyle v. Law*, 464 Fed. App'x 601, 604 (9th Cir. 2011). A review of the record shows the delays were primarily caused by Petitioner and his counsel, not the government. Therefore, the second *Barker* factor does not weigh in Petitioner's favor.

Third, whether in due course, Petitioner asserted his right to a speedy trial, does not weigh in his favor because Petitioner requested continuances. *See United States v. King,* 483 F.3d 483, 976 (9th Cir. 2007) (third *Barker* factor did "not strongly counsel in favor of finding a Sixth Amendment violation" because "[a]lthough [petitioner] at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time"); *Villasenor v. Brazelton*, 2014 WL 4219473, at *9 (N.D. Cal. Aug. 22, 2014) ("if a defendant asserts his speedy trial rights after requesting continuances, [the third] factor does not weigh in favor of finding a speedy trial violation" (citing *United States v. Corona–Verbera,* 509 F.3d 1105, 1116 (9th Cir. 2007)).

Fourth, whether Petitioner suffered prejudice because of the delay, Petitioner has not alleged any prejudice resulted from the perceived delay. While Petitioner states he was forced to represent himself and waive his right to a jury, there is no evidence the continuances are the only reason he made those choices or that he was prejudiced. For example, the trial court was not conducting jury trials due to Covid and, therefore, Petitioner opted for a bench trial. *See* Dkt. 24-1 at 226. After analyzing the four *Baker* factors, the Court finds Petitioner has not shown his speedy trial rights were violated.

Overall, Petitioner has not shown the state court's decision that Petitioner's speedy trial rights were not violated is not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court finds Ground 1 should be denied.

C. <u>Pro Se Colloquy (Ground 2)</u>

In Ground 2, Petitioner alleges the trial court's colloquy was inadequate when granting Petitioner's motion to proceed *pro se*. Dkt. 9 at 7.

The Sixth Amendment provides a defendant with the right to self-representation in criminal cases. *See Faretta v. California*, 422 U.S. 806, 821, 832 (1975). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Id.* at 835. "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (*quoting Brady v. United States,* 397 U.S. 742, 748 (1970)). Therefore, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)).

A defendant's waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *Brewer v. Williams*, 430 U.S. 387, 404 (1977) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622 (2002) (emphasis in original). The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Id.* at 88. However, "[w]arnings of pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Id.* at 89 (internal quotations and citations omitted); *see also Tovar*, 541 U.S. at 81 (in discussing waiver of counsel when entering a guilty plea, the Supreme Court found the constitutional requirements were satisfied when the trial court informed the accused of the nature of the charges against him, his right to be counseled regarding his case, and the range of allowable punishments).

REPORT AND RECOMMENDATION - 11

In finding Petitioner's waiver of counsel was valid, the state court of appeals stated:

> Harris contends that the trial court erred in granting his second motion to waive counsel without informing him of the possible maximum penalty he faced if convicted. Specifically, Harris contends that the court did not explain that Harris faced a life sentence with the possibility of release only at the discretion of the Indeterminate Sentence Review Board (ISRB). Harris maintains that because he lacked critical information to make an informed choice about proceeding without counsel, his waiver of the right to counsel was invalid.
>
> The Washington Constitution and the United States Constitution grant criminal defendants the right to self-representation. State v. Curry, 191 Wn.2d 475, 482, 423 P.3d 179 (2018). But this right is in tension with a defendant's constitutional right to the assistance of counsel. Id. "Because of this tension, a defendant must unequivocally request to proceed pro se before he or she will be permitted to do so." Id. at 482-83. And even if a defendant makes an unequivocal and timely request, the trial court may not grant a defendant's request to proceed pro se unless the defendant's waiver of the right to counsel is voluntary, knowing, and intelligent. Id. at 483.
>
> To determine whether a waiver is voluntary, knowing, and intelligent, the court must confirm "that the defendant understood the seriousness of the charge, the <u>possible maximum penalty involved</u>, and the existence of technical procedural rules governing the presentation of his defense." State v. DeWeese, 117 Wn.2d 369, 378, 816 P.2d 1 (1991) (emphasis added). "[A] colloquy on the record is the preferred means of assuring that defendants understand the risks of self-representation." City of Bellevue v. Acrey, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).
>
> While the rights involved in a motion to proceed pro se are constitutionally-based, the validity of a defendant's waiver of the right to counsel is reserved to the trial court's discretion and we review the court's decision on a motion for self-representation for an abuse of discretion. Curry, 191 Wn.2d at 483; State v. Silva, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). "[E]ven if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices." Curry, 191 Wn.2d at 484. The trial court is in a superior position to evaluate a defendant's request. Id. at 484-85. Unlike in federal court, the burden of proof on appeal "is on the defendant asserting that his right to counsel was not competently and intelligently waived." State v. Hahn, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).
>
> At the November 2020 hearing on Harris's initial motion, defense counsel confirmed that he had reviewed the waiver of counsel form with Harris "in its entirety," Harris had signed the form, and Harris had, in fact, represented himself in the first trial on the same charges. Although this signed waiver of counsel form supplied to the court is not included in the record on appeal, the record does include two waiver of counsel

REPORT AND RECOMMENDATION - 12

forms Harris signed in 2018 that expressly informed him that the statutory maximum penalty for both charged counts was life imprisonment and a $50,000 fine.

The court's colloquy on that first motion addressed Harris's literacy and English capability, his education, and the extent to which he had formal legal training. The court informed Harris that, if allowed to represent himself, he would be held to the same standard as an attorney and expected to follow the court rules and applicable evidentiary and procedural rules. The court set forth the charged offenses and informed Harris that both were Class A felonies and most serious felonies, "so the maximum penalty would be life in prison." The court further explained the indeterminate nature of the sentence he would face if convicted of rape in the first degree, and that if the ISRB released him from custody, he would be subject to lifetime supervision. The court informed Harris of the standard ranges that would apply to each count and that both offenses are "considered strike offenses". Harris indicated his understanding of all the foregoing.

The court then advised Harris that, if it granted his motion, he would not be entitled to assistance from the court, court staff, or the prosecutor, and the court would not appoint standby counsel. The trial court further advised that it would not be required to reappoint counsel if he were allowed to proceed pro se and later changed his mind and wished to be represented. Harris objected, arguing that he had the right to request counsel at any time if he needed one. Thus, the court found that Harris's request was equivocal and denied the motion.

When Harris reasserted his motion approximately two months later, a different trial court judge considered it. The court "abbreviate[ed]" the colloquy, since Harris represented himself at trial on the same charges, had already reviewed and signed the form to waive counsel, and participated in a colloquy with the previously-assigned judge several weeks prior. The court confirmed that Harris understood he would be required follow court rules as if he were a lawyer and was not entitled to standby counsel. Noting that Harris was facing a retrial, the court asked Harris if he was "aware of the penalty" he faced if convicted. The court confirmed that Harris's waiver was not a product of threats or promises. While indicating its view that "it's best to have someone who is trained in the law to represent you," the court granted Harris's motion.

Harris argues that the court abused its discretion when it granted his motion without a full colloquy that informed him of the maximum penalty to which he would be exposed at trial. But a deficiency in the colloquy at the time the court accepts a waiver of counsel is not fatal because even in the absence of a colloquy, "a waiver may still be valid if a reviewing court determines from the record that the accused was fully apprised of [the relevant] factors and other risks associated with self-representation that would indicate that he made his decision with his 'eyes open.' " Silva, 108 Wn. App. at 540; see also DeWeese, 117 Wn.2d at 378 (while a colloquy on the record is preferred; "in the absence of a colloquy, the record must reflect that the defendant understood the seriousness of the charge, the possible maximum penalty involved,

REPORT AND RECOMMENDATION - 13

and the existence of technical procedural rules governing the presentation of his defense."). Specifically, a defendant's waiver may be knowing and intelligent if the record "somehow otherwise show[s] that the defendant ... knew the possible maximum penalty." Acrey, 103 Wn.2d at 211. Viewing the record as a whole, this court is convinced that Harris went into his retrial with his eyes wide open, *i.e.*, he was fully apprised of the possible maximum penalty and other risks associated with self-representation.

Bolstering this conclusion, this court has held, in a remarkably similar case, that experience defending against the same crimes in a prior case may demonstrate awareness of the potential consequences of conviction. State v. Sinclair, 46 Wn. App. 433, 438-39, 730 P.2d 742 (1986). Sinclair sought to represent himself after the court denied his motion to discharge appointed counsel. Id. at 434-35. After advising Sinclair that he would be required to follow technical rules, the trial court granted his motion. Id. at 435. On appeal, this court addressed whether Sinclair's waiver of the right to counsel was knowing and intelligent where the trial court accepted the waiver without specifically informing Sinclair of the maximum penalty upon conviction. Id. at 438. Because the record indicated that Sinclair had previously been convicted of the same crime with which he was charged, this court concluded that he was "well aware" of the maximum possible sentence at the time of the waiver and his waiver of the right to counsel was valid. Id. at 439.

Harris relies on Silva, 108 Wn. App. at 537-538, for the proposition that a court's failure to explain the maximum possible penalties a defendant faced undermines the validity of the waiver of counsel. There, the defendant was charged with several offenses and sought to proceed pro se during a motion hearing in a separate, but concurrent, criminal matter. Silva was already representing himself in the other matter and the court granted his motion, without conducting a new colloquy, in reliance on the colloquy previously conducted in the other matter. Id. at 538. Silva challenged the validity of his waiver on appeal.

This court observed that it was problematic, though not fatal, that the only colloquy conducted by the court before Silva's waiver occurred in a separate criminal matter. Id. at 540. However, it was fatal that (1) the prior colloquy was tailored to Silva's postconviction request in the other matter, (2) the colloquy included no warnings about the risks associated with self-representation in a jury trial, and (3) the colloquy failed to include "critical information" about "the nature of the charges in *this* case and the maximum possible penalties Silva faced in this case." Id. at 540 (emphasis added). Under Silva, a prior colloquy cannot demonstrate awareness of the range of potential punishment unless that colloquy pertains to the same charges. And because Silva was "never advised" of the statutory maximum penalties for the charged offenses, we held that he "could not make a knowledgeable waiver of his constitutional right to counsel." Id. at 541 (emphasis added).

This case is distinguishable because Harris's earlier colloquy occurred in the same criminal proceeding, where Harris faced the same criminal charges, had already

REPORT AND RECOMMENDATION - 14

represented himself through trial and had been sentenced to the very sentences of which he now professes a lack of understanding, signed multiple waiver of counsel forms confirming his awareness of the maximum penalties, and was advised just two months earlier of the statutory maximum penalties he faced if convicted.

Harris also suggests that the prior advisement was "inadequate" because the court ultimately concluded that his request was equivocal. But it is not clear, and Harris fails to explain or provide authority explaining, how the first court's determination that his initial request was equivocal relates to or affects his awareness of the potential punishment. That court did not "close his eyes" to the risks associated with self-representation.

Finally, Harris also relies on United States v. Moskovits, 86 F.3d 1303, 1306 (3rd Cir. 1996), to argue that the record is insufficient to demonstrate his awareness of the maximum penalty. That case is also distinguishable. A jury convicted Moskovits of drug offenses and the court imposed a 15-year sentence. Id. at 1305. The court later granted Moskovits's motion for collateral relief based on ineffective assistance of counsel, vacated his convictions, and granted his motion to represent himself on retrial. Id. The district court conducted a "lengthy and detailed" colloquy on his motion, but omitted *any* discussion of punishment. Id. at 1306. The appellate court rejected the government's invitation to rely on presentence investigation reports prepared before the first sentencing or an in-chambers discussion just before trial to infer that the defendant was aware, when he waived his right to counsel, that he could receive a sentence beyond the 15-year mandatory minimum on retrial. Id. at 1307-08. The court found that there was no basis to assume that the defendant read and understood the presentence reports or that counsel then representing him explained the range of punishment and any discussion after the waiver occurred had no bearing on the defendant's understanding at the time of the waiver. Id.

Unlike Moskovits, the trial court here engaged in a colloquy, before Harris waived his right to counsel, that addressed the maximum punishment.

For these reasons, we conclude the waiver of counsel was valid.

Dkt. 24-1 at 20-28 (footnotes omitted).

Here, Petitioner represented himself in his first trial, where he faced the same charges and potential sentences. When preparing for the second trial, the trial court conducted a thorough colloquy, rigorously conveyed to Petitioner the dangers of self-representation, and strongly urged Petitioner against waiving counsel. *See* Dkt. 24-1 at 213-20. The trial judge and the prosecutor provided Petitioner with information about the maximum sentences as to each count Petitioner

REPORT AND RECOMMENDATION - 15

faced. *See id.* at 215-18. Petitioner objected to the trial court's statement that, if he was granted leave to proceed pro se, the trial court was not required to appoint Petitioner counsel if Petitioner changed his mind. *Id*. at 219. The trial court denied Petitioner's motion, finding Petitioner was equivocal about waiving his right to counsel. *Id*. at 220.

On January 11, 2021, Petitioner was again heard by a different trial court judge regarding a renewed motion to proceed pro se. Dkt. 24-1 at 224. While this colloquy was not as robust, the trial court judge referenced the previous colloquy conducted in November 2020, asked Petitioner why he wanted to represent himself, asked if Petitioner was aware of the penalty if convicted, and warned against proceeding pro se. *See id*. at 225-29.

There is no specific litany or formula mandated by the Supreme Court to ensure a waiver of the right to counsel is knowing and intelligent. *Lopez v. Thompson*, 202 F.3d 1110, 1119 (9th Cir. 2000).[1] Here, during the waiver colloquies, Petitioner was properly informed of and generally understood the maximum penalty he faced if he was convicted of the charged crimes. *See* Dkt. 24-1 at 213-20, 224-29; *Arrendondo v. Neven*, 763 F.3d 1122, 1130 (9th Cir. 2014) ("a defendant must have a general understanding of the potential penalties of conviction before waiving counsel to render that waiver valid"); Fed. R. Crim. P. 11(c) (before waiving constitutional rights, a defendant must understand "the maximum penalty provided by law"). He was also warned against representing himself. Considering the record as a whole, Petitioner knew what he was doing and made the choice to represent himself with "eyes open." *Faretta*, 422 U.S. at 835.

Petitioner fails to show the trial court's colloquies were inadequate. Further, he has not cited to any clearly established federal law that prohibits the Court from considering all waiver

---

[1] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 16

colloquies that occurred in a case. Therefore, Petitioner has not demonstrated the state court's conclusion that Petitioner's waiver of his right to counsel was knowing, voluntary, and intelligent was contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Ground 2 should be denied.

### IV.    Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

### V.    Conclusion

For the above stated reasons, the Court concludes Petitioner has not shown the state courts' adjudication of the grounds raised in the Petition was contrary to, nor an unreasonable application of, clearly established federal law. Additionally, an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be denied and a certificate of appealability not be issued. While the Court recommends denying the Petition and the certificate

of appealability, the Court does not find Petitioner's *in forma pauperis* status should be revoked on appeal at this time.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on December 1, 2023, as noted in the caption.

Dated this 13th day of November, 2023.

David W. Christel
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 18